# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WARREN J. DEEMER, et al.**                    CIVIL ACTION

**VERSUS**                                      NO.  17-2019

**DEUTSCHE BANK NATIONAL TRUST**                SECTION: "G"(3)
**COMPANY, et al.**


## ORDER

Pending before this Court is Defendants Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset-Backed Pass through Certificates, Series 2006-M1 ("Deutsche Bank"), and Ocwen Loan Servicing, LLC's ("Ocwen") (collectively, "Defendants") "Rule 12(C) Motion for Partial Judgment on the Pleadings."[1] In this litigation, Plaintiffs Warren Deemer and Mary Deemer ("Plaintiffs") allege that Defendants, acting as servicers of Plaintiffs' Mortgage Loan, foreclosed on Plaintiffs' house when Plaintiffs were not in default of payment. Accordingly, Plaintiffs bring claims for: (1) fraud; (2) breach of contract and implied breach of contract; (3) negligence; (4) conversion; (5) violations of the Fair Debt Collection Practices Act; (6) violations of the Fair Credit Reporting Act; (7) violations of the Louisiana Unfair Trade Practices Act; (8) and unjust enrichment. In the instant motion, Defendants argue that all of Plaintiffs' claims, except the claim for breach of contract, should be dismissed, and Plaintiffs

---

[1] Rec. Doc. 31.

should not be permitted to recover non-pecuniary damages for the remaining breach of contract claim.

Defendants filed the instant motion on January 2, 2018.[2] Plaintiffs filed a memorandum in opposition to Defendants' motion on January 12, 2018.[3] On January 19, 2018, with leave of Court, Defendants filed a reply.[4] Also on January 19, 2018, with leave of Court, Plaintiffs filed a supplemental memorandum in opposition to Defendants' motion.[5]

Having considered the motion, the memoranda in support and opposition, and the applicable law, the Court will grant Defendants' motion as to Plaintiffs' claim for violation of the Louisiana Unfair Trade Practices Act and as to Plaintiffs' claim pursuant to Section 1681s–2(a) of the Fair Credit Reporting Act. The Court will deny Defendants' motion as to whether Plaintiffs' tort claims are prescribed. The Court will also deny Defendants' motion as to Plaintiffs' claims pursuant to the Fair Debt Collection Practices Act and as to Plaintiffs' claim for unjust enrichment. The Court will grant Plaintiffs leave to amend their complaint as to whether Plaintiffs are entitled to non-pecuniary damages for the breach of contract claim. Finally, the Court will also grant Plaintiffs leave to amend their complaint as to Plaintiffs' claims for fraud, Plaintiffs' claim pursuant to Section 1681s–2(b) of the Fair Credit Reporting Act, and Plaintiffs' state law claim based on Defendants' credit reporting.

---

[2] *Id.*

[3] Rec. Doc. 34.

[4] Rec. Doc. 40.

[5] Rec. Doc. 41.

# I. Background

In the amended petition for damages, Plaintiffs allege that in October 1993, Plaintiffs purchased immovable property located at 708 Victory Drive, Westwego, Louisiana.[6] In April 2013, Plaintiffs aver they received a phone call from Ocwen, during which the Ocwen representative stated that Plaintiffs were delinquent on their loan, but he or she could not tell Plaintiffs when the missed payment occurred.[7] Plaintiffs, however, aver that they were not delinquent on the loan.[8] Sometime after the phone call, according to Plaintiffs, Ocwen cut off communication with them, and they were told that Ocwen was unable to communicate with Plaintiffs due to their 2008 bankruptcy filing.[9]

According to Plaintiffs, Ocwen did not continue to send Plaintiffs monthly statements; however, Plaintiffs paid the amount due each month.[10] On December 27, 2013, Plaintiffs aver they received a letter stating their payment for $657.04 was returned.[11] Plaintiffs further aver that when they contacted Ocwen to inquire about the returned payment, they were informed that they would be required to pay $3505.55 to bring the account current.[12]

---

[6] Rec. Doc. 1-2 at 1.

[7] *Id*. at 2.

[8] *Id*.

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*.

On April 16, 2015, Plaintiffs aver, Deutsche Bank filed a petition for Mortgage Foreclosure by Executory Process.[13] Plaintiffs further aver that on July 22, 2015, the property was sold at a sheriff's auction, and the purchaser was Deutsche Bank.[14]

Finally, Plaintiffs allege that in September 2015, Ocwen cashed all payments it had withheld and not applied to Plaintiff's loan.[15] Plaintiffs aver that, to date, they have not received a credit or otherwise been reimbursed for these funds.[16] On June 1, 2016, Plaintiffs aver, they received a "5 Day Notice to Vacate Premises."[17]

## II. Parties Arguments

### A.     *Defendants' Motion for Partial Judgment on the Pleadings*

Defendants first argue that all of Plaintiffs' tort claims are facially prescribed pursuant to Louisiana Civil Code Article 3492's one-year liberative prescriptive period for delictual actions.[18] Moreover, Defendants argue that Plaintiffs' tort claims are based on misapplied and/or converted loan payments in 2013; and therefore, Plaintiffs' alleged injuries or damages triggering the start of the one-year period were sustained in December 2013 at the latest.[19] Defendants aver that Plaintiffs

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 3.

[16] *Id.*

[17] *Id.*

[18] Rec. Doc. 31-1 at 6.

[19] *Id.* at 7–8.

filed their original petition on May 12, 2016, over two years late; and therefore, Plaintiffs' tort claims are facially prescribed.[20]

Defendants argue that the burden thus shifts to Plaintiffs to prove an interruption or suspension of prescription, which they cannot do because Plaintiffs knew about the alleged misapplied and "converted" loan payments underlying their tort claims since at least December 2013.[21] Accordingly, Defendants argue, Plaintiffs' claims for fraud, negligence, and conversion should be dismissed.[22]

Even if Plaintiffs' fraud claim was not time-barred, Defendants argue, Plaintiffs' fraud claim fails the pleading requirements of Federal Rule of Civil Procedure 9(b) because Plaintiffs cannot establish that Ocwen intentionally refused to disclose information about the alleged missed payments with the purpose of defrauding or gaining an unfair advantage over Plaintiffs.[23] Moreover, Defendants argue, the Amended Petition is devoid of any factual allegations that Ocwen acted with fraudulent intent, other than the conclusory statement that "Ocwen has defrauded Plaintiffs in an effort to maximize their monetary gain, to steal their home, and to steal their monthly mortgage payments."[24]

Furthermore, Defendants argue, Plaintiffs' allegations of fraud based on Ocwen's alleged refusal to speak or failure to disclose are insufficient because Plaintiffs have not alleged the

---

[20] *Id.*

[21] *Id.* at 8.

[22] *Id.*

[23] *Id.* at 8–9.

[24] *Id.* at 9.

existence of a fiduciary relationship between Ocwen and themselves that would give rise to a legal duty to speak.[25] According to Defendants, any obligation to disclose payment information to Plaintiffs would instead arise strictly from the Mortgage Loan, for which Plaintiffs have asserted a separate breach of contract claim.[26] Accordingly, Defendants argue, Plaintiffs' claim for fraud should be dismissed.[27]

Defendants next argue that Plaintiffs' claim pursuant to the Fair Debt Collection Practices Act fails because neither Ocwen nor Deutsche Bank was a debt collector, as defined by the FDCPA.[28] Defendant argues that because any supposed debt-collection activity conducted by Ocwen in connection with the Mortgage Loan "concerns a debt which was not in default at the time it was obtained," Ocwen is not subject to the FDCPA.[29]

Similarly, Defendants argue, Deutsche Bank is a creditor, not a "debt collector," as defined by the FDCPA. According to Defendants, the Mortgage Loan was transferred to Deutsche Bank sometime between September 2008 and February 2013, before Plaintiffs were in default.[30] Thus, Defendants argue, Deutsche Bank was seeking through the state court foreclosure action to collect its own debt, which was acquired before Plaintiffs went into default; and therefore, the FDCPA does not apply to any collection efforts undertaken directly by Deutsche Bank with respect to the

---

[25] *Id*. at 9–10.

[26] *Id*. at 10.

[27] *Id*. at 9.

[28] *Id*. at 10.

[29] *Id*. at 10–11 (quoting 15 U.S.C. § 1692a(6)(F)(iii)).

[30] *Id*. at 11.

Mortgage Loan.[31] Accordingly, Defendants argue, Plaintiffs' claim pursuant to the FDCPA as to Ocwen and Deutsche Bank should be dismissed.[32]

With respect to Plaintiffs' claim pursuant to the Fair Credit Reporting Act, Defendants argue that Plaintiffs have no private right of action because enforcement of Section 1681s–2(a) is governed exclusively by the FTC and other government entities, and Section 1681s–2(a) is explicitly excluded from private rights of action by Section 1681s–2(c).[33] Furthermore, Defendants argue that they cannot be liable pursuant to FCRA Section 1681s–2(b) because Plaintiffs do not allege that they first reported the supposed inaccurate credit information to a CRA, the CRA notified Defendants of the dispute, and Defendants failed to adequately investigate the dispute and correct any inaccurate information, as required by the statute.[34] Accordingly, Defendants argue, Plaintiffs' claim pursuant to the FCRA should be dismissed.[35]

With respect to Plaintiffs' claim for breach of contract, Defendants argue that Plaintiffs cannot recover non-pecuniary damages because Plaintiffs cannot establish that the contract was entered into for a non-pecuniary purpose.[36] Specifically, Defendants argue that a mortgage loan does not gratify a non-pecuniary interest and, thus, cannot support a claim for non-pecuniary

---

[31] *Id.* at 12.

[32] *Id.*

[33] *Id.* at 12–13.

[34] *Id.* at 14.

[35] *Id.*

[36] *Id.* at 15.

damages under Civil Code Article 1998.[37] Furthermore, Defendants contend, Plaintiffs do not allege that Defendants intended to aggrieve their feelings by supposedly breaching the Mortgage Loan.[38] Accordingly, Defendants argue, Plaintiffs should not be permitted to recover non-pecuniary damages for their breach of contract claim.[39]

Defendants next argue that the remaining claims from Plaintiffs' original petition pursuant to the Louisiana Unfair Trade Practices Act and for unjust enrichment should also be dismissed to the extent Plaintiffs maintain them.[40] Defendants first argue that because Deutsche Bank is a federally chartered bank insured by the Federal Deposit Insurance Company, regulated and supervised by the Federal Reserve Board, Deutsche Bank is exempt from LUTPA under section 51:1406(1), which exempts entities, actions, or transactions subject to regulation and oversight by federal or state regulatory bodies.[41] Defendants also argue that because Ocwen's mortgage-lending activity is otherwise regulated by the Louisiana Commissioner of Financial Institutions (the "Commissioner") pursuant to the Louisiana Residential Mortgage Lending Act, Ocwen is exempt from LUTPA pursuant to section 51:1406(1).[42] Furthermore, Defendants argue, to the extent

---

[37] *Id*. (citing *Floyd v. Wells Fargo Home Mortg. Co*., 848 F. Supp. 2d 635, 645 (E.D. La 2012)).

[38] *Id*. at 16.

[39] *Id*.

[40] *Id*.

[41] *Id*. at 16–17.

[42] *Id*. at 17–18.

Plaintiffs allege any valid claim against Defendants pursuant to LUTPA, which they have not, that claim is facially preempted pursuant to LUTPA's one-year limitations period.[43]

Last, Defendants argue that because Plaintiffs have other legal remedies against Defendants, whether or not Plaintiffs are successful in pursuing those remedies, Plaintiffs' claim for unjust enrichment should be dismissed.

**B.** ***Plaintiffs' Arguments in Opposition to Defendants Motion for Partial Judgment on the Pleadings***

Plaintiffs first argue that their tort claims are not prescribed.[44] Plaintiffs acknowledge that Louisiana tort claims have a one-year prescriptive period, but argue that "Plaintiffs could not have known when a simple accounting mistake morphed into a cognizable legal claim until the house was actually sold at foreclosure in July of 2015," and therefore, the doctrine of *contra non valentem* as an exception to the running of liberative prescription applies.[45] Since the original petition was filed in May 2016, Plaintiffs contend, their action was brought within one year of Plaintiffs having acquired knowledge of facts indicating that they had been a victim of tort.[46]

Furthermore, Plaintiffs argue, their claims are not only based on the misapplied payments in 2013 but also that Ocwen lied and claimed to have returned payments that it was holding and

---

[43] *Id*. at 18–19.

[44] Rec. Doc. 34 at 4.

[45] *Id*. at 4–5.

[46] *Id*.

not applying.[47] Moreover, Plaintiffs argue, they had no way of knowing until Ocwen cashed the held checks in September 2015 that they were victims of that particular wrongdoing.[48]

In the alternative, Plaintiffs argue, they were victims of a continuous tort because the improper accounting was continuous and ongoing, which caused payments to not be credited towards their loan and ultimately led to the foreclosure on the property.[49] Pursuant to the continuous tort doctrine, Plaintiffs argue that the prescription begins to run on the date the tortious conduct concludes, which in this case is July 22, 2015, the date of the foreclosure.[50] Thus, Plaintiffs argue, their tort claims for fraud, negligence, and conversion are valid and should not be dismissed.[51]

Next, Plaintiffs argue that they alleged the following facts with particularity sufficient to state a fraud claim: they made all payments to Ocwen that were due and owing; Plaintiffs, individually and through their attorney, sent proof of such payments to Ocwen prior to the foreclosure sale date; even with the proof of payment, Ocwen refused to reconcile their accounting and instead sold Plaintiffs' home at foreclosure; Ocwen knew that payments were being held despite the false representation that they had been returned to Plaintiffs as Ocwen negotiated the checks after the foreclosure sale in September 2015; and through these fraudulent acts, Ocwen

---

[47] *Id*. at 5.

[48] *Id*.

[49] *Id*. at 5–6.

[50] *Id*. at 6.

[51] *Id*.

obtained mortgage payments from Plaintiffs.[52] Accordingly, Plaintiffs argue, they have met the requisite pleading standard for fraud, and the claim should not be dismissed.[53]

With respect to Plaintiffs' claim pursuant to the Fair Debt Collection Practices Act, Plaintiffs argue that Ocwen was a debt collector because it sought payments from Plaintiffs while claiming that the loan was not current.[54] Plaintiffs further argue that their FDCPA claim should also proceed against Deutsche Bank because Deutsche Bank engaged in improper debt collection activity by filing for foreclosure on Plaintiffs' home when the debt was not valid.[55] Plaintiffs contend that whether the loan was in default at the time it was transferred to Deutsche Bank is a question of material fact and therefore not susceptible for dismissal pursuant to a challenge under Federal Rule of Civil Procedure 12(c).[56]

Furthermore, Plaintiffs contend that they have adequately stated a claim pursuant to the Fair Credit Reporting Act by alleging that Ocwen is knowingly reporting incorrect and derogatory information to credit reporting bureaus which have resulted in the Plaintiffs incurring credit related damages.[57] In the alternative, Plaintiffs "allege damage to credit under theories of state law based on fraud, breach of contract, negligence, and conversion."[58] Accordingly, Plaintiffs argue that their

---

[52] *Id*. at 7.

[53] *Id*. at 8.

[54] *Id*. at 8–9.

[55] *Id*. at 9.

[56] *Id*.

[57] *Id*.

[58] *Id*. at 10–12.

FCRA claim should not be dismissed, and in the alternative, the Court should permit Plaintiffs to proceed on state law claims for their allegations of damage to credit.[59]

With respect to Plaintiffs' breach of contract claim, Plaintiffs argue that they are entitled to non-pecuniary damages pursuant to Louisiana Civil Code article 1998, which states, "Regardless of the nature of the contract, [non-pecuniary] damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee."[60] Plaintiffs contend that Defendants acted in bad faith by failing to utilize prudent business practices in their dealings with Plaintiffs, and therefore, Defendants intended to aggrieve Plaintiffs.[61] Accordingly, Plaintiffs contend that they should be permitted to recover non-pecuniary damages for their breach of contract claim.[62]

With respect to Plaintiffs' claim for unjust enrichment, Plaintiffs acknowledge that prior to the foreclosure, other legal remedies were available and are asserted through this lawsuit.[63] However, Plaintiffs argue that should the Court determine that no legal remedies exist for claims after the contractual relationship ended, Plaintiffs should be permitted to proceed under the theory of unjust enrichment.[64]

---

[59] *Id.* at 12.

[60] *Id.* at 12.

[61] *Id.* at 12–13.

[62] *Id.* at 13.

[63] *Id.*

[64] *Id.*

Finally, Plaintiffs consent to voluntary dismissal of their claim pursuant to the Louisiana Unfair Trade Practices Act.[65] In addition, Plaintiffs request leave to amend all claims pursuant to Rule 16(b)(4) in the event that this Court grants Ocwen's Rule 12(c) Motion to Dismiss as to any claims.[66]

## C.     *Defendants' Arguments in Further Support of Defendants' Motion for Partial Judgment on the Pleadings*

In reply, Defendants first argue that the Court should grant Defendants' motion as unopposed because Plaintiffs did not timely file their opposition brief in accordance with the Court's local rules.[67] Specifically, Defendants contend that this motion was set for submission on January 17, 2018, so pursuant to Local Rule 7.5, Plaintiffs were required to file their opposition memorandum no later than January 8, 2018.[68] Since Plaintiffs did not file their opposition until January 12, 2018, and with no explanation for the late filing, Defendants argue, their opposition is untimely and should not be considered by the Court.[69]

Next, Defendants argue that Plaintiffs' tort claims are prescribed and the continuing tort doctrine does not apply. Defendants argue that the letter from and phone call to Ocwen on

---

[65] *Id*. In the memorandum in opposition to Defendants' motion for partial judgment on the pleadings, Plaintiffs state, "Plaintiffs concur that claims under LUTPA and based on unjust enrichment are subject to dismissal at this juncture." Rec. Doc. 34 at 13. However, Plaintiffs assert an alternative claim for unjust enrichment should the court determine that no legal remedies exist for claims after the contractual relationship ended. *Id*. Accordingly, the Court assumes Plaintiffs intended only to concur that the LUTPA claim is subject to dismissal at this juncture. *Id*.

[66] *Id*. at 14.

[67] Rec. Doc. 40 at 2.

[68] *Id*.

[69] *Id*.

December 27, 2013, were sufficient to provide Plaintiffs with constructive notice of their tort claims and to begin the one-year prescriptive period.[70] Defendants further argue that the Amended Petition does not identify any loan payments that Ocwen supposedly misapplied, converted, or failed to return, other than the 2013 payments.[71] Furthermore, Defendants argue that the continuing-tort theory is not applicable to this case because each alleged misapplied or converted loan payment that Plaintiffs complain about constitutes "a separate wrong;"[72] none of Defendants' alleged actions constitute "continuous, cumulative, synergistic" conduct;[73] and each of Defendants' alleged misapplication or conversion of Plaintiffs' loan payments gave rise to "a finite ascertainable amount of damages."[74] Accordingly, Defendants contend that Plaintiffs' tort claims are prescribed and cannot be maintained on a continuous tort theory; thus, Plaintiff's tort claims should be dismissed.[75]

With respect to Plaintiffs' claim for fraud, Defendants argue that Plaintiffs "significantly fail to identify any allegations of an **intentional** misrepresentation or suppression of true information by Defendants that was made with the purpose of defrauding or gaining an unfair advantage over Plaintiffs," and therefore, this claim should be dismissed.[76]

---

[70] *Id*. at 3.

[71] *Id*. at 4.

[72] *Id*. (quoting *Costello v. Citibank (South Dakota), N.A.*, 45,518 (La. App. 2nd Cir. 9/29/10), 48 So. 3d 1108, 1113).

[73] *Id*. (quoting *Bustamento v. Tucker*, No. 92-C-0523 (La. 10/19/92), 607 So. 2d 532, 542).

[74] *Id*. (quoting *Costello*, 48 So. 3d at 1113).

[75] *Id*. at 3–5.

[76] *Id*. at 5 (citing La. Civ. Code art. 1953; Anderson v. Moreno's Air Conditioning, Inc., 14-27 (La. App. 3rd

With respect to Plaintiffs' claim pursuant to the Fair Debt Collections Practices Act, Defendants argue that Ocwen was not a debt collector as defined by the Act because a mortgage servicer is not a "debt collector" subject to the FDCPA if the debt-collection activities at issue involve a debt that was not in default when it was acquired by the servicer, and the mortgage loan was not in default when servicing rights were transferred to Ocwen in March 2013.[77] Defendant further contends that Plaintiffs do not allege that Ocwen represented the loan was in default until April 2013, and in fact, Plaintiffs allege that Ocwen told them they were current on the loan in March 2013.[78] Defendants distinguish this case from *Bridge v. Ocwen Federal Bank, FSB*, in that unlike the defendant in *Bridge*, Ocwen is not adopting contrary positions regarding its status as a debt collector, as Ocwen specifically told Plaintiffs the loan was current in March 2013 and did not claim the loan was delinquent at that time.[79] Regarding Deutsche Bank, Defendants argue that the FDCPA does not apply to a consumer's creditors "except 'to the extent that [a creditor] receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another'" person.[80] In this case, Defendants argue, Deutsche Bank was seeking to

---

Cir. 6/4/14), 140 So. 3d 841, 852) (bold and italics in original).

[77] *Id*. at 5–6 (citing 15 U.S.C. § 1692a(6)(F)(iii); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).

[78] *Id*. at 6.

[79] *Id*. (citing 681 F.3d 355, 360 (6th Cir. 2012)).

[80] *Id*. at 6–7 (citing *Miller v. BAC Home Loans Servicing*, L.P., 726 F.3d 717, 722 (5th Cir. 2013); 15 U.S.C. § 1692a(4); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997)).

collect its own debt as a creditor and thus is not subject to any liability under the FDCPA.[81] Accordingly, Defendants argue that Plaintiffs' FDCPA claim should be dismissed.[82]

Defendants next argue that "Plaintiffs effectively concede that their claim under FCRA Section 1681s-2 against Defendants, as the alleged furnishers of inaccurate credit information, fails as a matter of law."[83] Specifically, Defendants contend that Plaintiffs do not dispute that they have no private right of action against a furnisher of inaccurate credit information under FCRA Section 1681s–2(a).[84] Defendants further contend that Plaintiffs do not attempt to argue or allege that they notified any Consumer Reporting Agency ("CRA") of the supposed disputed credit information or that any notice of disputed credit information was provided to, or received by, Defendants from any CRAs.[85]

To the extent Plaintiffs allege state law tort claims for credit damages, Defendants assert, those claims are preempted under the FCRA and governed exclusively under FCRA Section 1681s–2, pursuant to which Plaintiffs have failed to state a claim.[86] Moreover, Defendants assert, federal preemption bars all state-law claims against furnishers of credit information; and Plaintiffs'

---

[81] *Id.* at 7.

[82] *Id.* at 5–7.

[83] *Id.* at 7.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 8.

tort claims seeking alleged credit damages are each a "requirement or prohibition" imposed by Louisiana state law, which are preempted under FCRA Section 1681t(b)(1)(F).[87]

Defendants also argue that to the extent Plaintiffs seek to assert an unjust enrichment claim in the alternative, "Plaintiffs cannot circumvent clear Louisiana law that provides an unjust enrichment remedy is unavailable where the plaintiff has other legal remedies, even if the plaintiff is ultimately unsuccessful in pursuing those remedies."[88] Moreover, by alleging claims for, among other things, breach of contract, negligence, conversion, and fraud, Defendants argue, Plaintiffs have barred themselves from bringing an unjust enrichment claim, regardless of whether those other claims are ultimately successful.[89]

Finally, Defendants argue that Plaintiffs have not adequately alleged they are entitled to non-pecuniary damages for breach of contract because Article 1998's requirements for non-pecuniary damages apply even if a plaintiff alleges a bad-faith breach of contract pursuant to Civil Code Article 1997.[90] Moreover, Defendants argue, Plaintiffs have not alleged that Defendants' alleged breach of contract was "calculated to inflict grief, vexation, or inconvenience on" Plaintiffs, or even that Defendants breached the contract purposefully or intentionally.[91]

---

[87] *Id.*

[88] *Id.* at 9.

[89] *Id.*

[90] *Id.* (citing *Nolan v. Commonwealth Nat'l. Life Ins. Co.*, 28,777 (La. App. 2nd Cir. 11/1/96), 688 So. 2d 581, 585; *Jarrell v. Miller*, 38,360 (La. App. 2nd Cir. 9/9/04), 882 So. 2d 639).

[91] *Id.* at 9–10 (quoting *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 719 (E.D. La. 2009)).

Accordingly, Defendants argue, Plaintiffs should be precluded from recovering non-pecuniary damages for their breach of contract claim.[92]

### D.    *Plaintiffs' Arguments in Further Opposition to Defendants' Motion for Partial Judgment on the Pleadings*

Plaintiffs first argue that their tort claims are not prescribed because the 2013 December letter was not enough to prove actual notice that the Plaintiffs were victims of a tort.[93] Moreover, Plaintiffs repeat the argument made in their opposition that Plaintiffs could not have known when a simple accounting mistake morphed into a cognizable legal claim until the house was actually sold at foreclosure in July of 2015, and that they had no way of knowing that Ocwen lied about returning Plaintiffs' payments until Ocwen cashed the held checks in September 2015, which occurred within one year of filing the original petition.[94] Plaintiffs also repeat their argument that in the alternative, Defendants' continuous and ongoing activity of improper accounting since the first misapplied payment in 2013 constitutes a continuous tort that did not end until the foreclosure of their property on July 22, 2015, which was within one year of filing the original petition.[95]

With respect to their claim for fraud, Plaintiffs repeat the argument made in their opposition that they have alleged facts with specificity sufficient to meet the pleading standard for fraud.[96] Furthermore, Plaintiffs contend that Ocwen's refusal to provide information about their loan is the

---

[92] *Id*. at 10.

[93] Rec. Doc. 41 at 5.

[94] *Id*.

[95] *Id*. at 5–6.

[96] *Id*. at 7.

cause of any lack of specificity in their pleading as to that act of fraud, and therefore, when the facts are accepted as true and construed in the light that is most favorable to the Plaintiffs as the law requires, requisite pleading standard for fraud is met.[97]

Next, Plaintiffs argue that they have adequately stated a claim pursuant to the Fair Debt Collection Practices Act because Plaintiffs are not required to explicitly allege that Ocwen fits squarely within the definition of "debt collector" under 15 U.S.C. 1692a(6) to survive a challenge on the pleadings. According to Plaintiffs, they have sufficiently alleged that the loan was transferred to Ocwen, Ocwen later engaged in persistent efforts to collect a debt using mechanisms of inter-state commerce, and at the time of transfer, Ocwen represented to Defendants that the loan was not current.[98]

With respect to their claim pursuant to the Fair Credit Reporting Act, Plaintiffs argue that they have adequately stated a claim pursuant to the FCRA by alleging that Ocwen is knowingly reporting incorrect and derogatory information to credit reporting bureaus which have resulted in the Plaintiffs incurring credit related damages.[99] To the extent their claims do not fit squarely into the requirement of the FCRA, Plaintiffs repeat the argument made in their opposition that they can proceed on state law causes of actions related to Ocwen's reporting of their credit.[100] Plaintiffs cite one district court case in the Northern District of Texas, *Carlson v. Trans Union, LLC, et al.*, in support of their assertion that although the Fifth Circuit has yet to rule on whether Section 1681t

---

[97] *Id.* at 7–8.

[98] *Id.* at 8–9.

[99] *Id.* at 10.

[100] *Id.*

of the FCRA imposes a blanket prohibition against state law credit damages claims, district courts within the Fifth Circuit have held that some claims relating to credit damage may proceed under theories of state law.[101]

Plaintiffs next repeat the arguments made in their opposition that they are entitled to non-pecuniary damages for the breach of contract claim because Defendants acted in bad faith.[102] Plaintiffs also repeat their argument to proceed alternatively under the theory of unjust enrichment should the Court determine that no legal remedies exist for claims after the contractual relationship ended.[103] Plaintiffs additionally repeat consent to dismiss the claim pursuant to the Louisiana Unfair Trade Practices Act.[104] Finally, Plaintiffs repeat their request for leave to amend their claims pursuant to Rule 16(b)(4) in the event that this Court grants Ocwen's Rule 12(c) Motion to Dismiss as to any claims.[105]

### III. Law

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[106] "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings

---

[101] *Id.* at 11–12.

[102] *Id.* at 12–13.

[103] *Id.* at 13.

[104] *Id.*

[105] *Id.* at 14.

[106] Fed. R. Civ. P. 12(c).

and any judicially noticed facts."[107] "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[108] On a 12(c) motion, "[p]leadings should be construed liberally," and judgment is "appropriate only if there are no disputed issues of fact and only questions of law remain."[109] Moreover, the Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[110] In lieu of dismissal on a motion for judgement on the pleadings, a district court may grant plaintiffs leave to amend their complaint.[111]

## IV. Analysis

In this litigation, Plaintiffs bring claims for: (1) fraud; (2) breach of contract and implied breach of contract; (3) negligence; (4) conversion; (5) violations of the Fair Debt Collection Practices Act; (6) violations of the Fair Credit Reporting Act; (7) violations of the Louisiana Unfair Trade Practices Act; (8) and unjust enrichment. In the instant motion, Defendants argue that all Plaintiffs' claims except the claim for breach of contract should be dismissed, and Plaintiffs should not be permitted to recover non-pecuniary damages for the remaining breach of contract claim. In their opposition and supplemental opposition, Plaintiffs consent to dismissal of their claim

---

[107] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002) (internal citations omitted).

[108] *Id.* (internal citations omitted).

[109] *Id.* (internal citations omitted).

[110] *Id.*

[111] *Dueling v. Devon Energy Corp.*, 623 F. App'x 127 (5th Cir. 2015).

pursuant to the Louisiana Trade Practices Act, however, oppose all other arguments Defendants put forth in favor of dismissal.[112]

With respect to Defendants' argument that the Court should not consider Plaintiffs' untimely opposition, the Court has broad discretion as to whether to consider untimely filings, including oppositions to motions.[113] In this case, where both Plaintiffs and Defendants were granted leave to file additional briefings after Plaintiffs filed their opposition, the Court finds it appropriate to exercise its discretion to allow Plaintiffs' opposition.

## A.    *Whether Plaintiffs' Tort Claims for Negligence, Conversion, and Fraud Are Prescribed*

Defendants argue that all of Plaintiffs' tort claims are facially prescribed pursuant to Louisiana Civil Code Article 3492's one-year liberative prescriptive period for delictual actions. Specifically, Defendants argue that Plaintiffs' tort claims are based on misapplied and/or converted loan payments in 2013, which Plaintiffs knew about at the time; and therefore, Plaintiffs' alleged injuries or damages triggering the start of the one-year period were sustained in December 2013 at the latest. Furthermore, Defendants argue that the continuing-tort theory is not applicable to the facts of this case.

Plaintiffs acknowledge that Louisiana tort claims have a one-year prescriptive period, but argue that Plaintiffs did not know of their cognizable legal claims until the house was actually sold at foreclosure in July of 2015, and therefore, the doctrine of *contra non valentem* as an exception

---

[112] Rec. Doc. 34 at 13; Rec Doc. 41 at 13.

[113] Nelson v. Star Enter., 220 F.3d 587 (5th Cir. 2000) ("District courts have broad discretion to consider untimely oppositions to motions for summary judgment."); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995) (holding that "the district court properly exercised its discretion by accepting Appellee's motion out of time").

to the running of liberative prescription applies. Furthermore, Plaintiffs argue, their claims are also based on the fact that Ocwen lied about returning payments that it was holding and not applying, which Plaintiffs had no way of knowing was untrue until Ocwen cashed the held checks in September 2015. In the alternative, Plaintiffs argue, they were victims of a continuous tort that did not end until July 22, 2015, the date of the foreclosure.

When presented with a state law claim, "federal courts apply state statutes of limitations and related state law governing tolling of the limitation period."[114] "[U]nder Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted.[115] Louisiana Civil Code article 3492 states, "Delictual actions are subject to a liberative prescription of one year." Ordinarily, the defendant bears the burden of showing that an action has prescribed.[116] "If prescription is evident on the face of the pleadings, however, the burden shifts to the plaintiff to show that the action has not prescribed."[117]

"Louisiana jurisprudence has long recognized the doctrine of *contra non valentem* as a means of suspending the running of prescription when the circumstances of a case fall within one

---

[114] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (1989).

[115] *Bustamento*, 607 So. 2d at 537.

[116] *Albe v. City of New Orleans*, 2014-0186 (La. App. 4 Cir. 9/17/14), 150 So. 3d 361, 366, writ denied, 2014-2166 (La. 12/8/14), 153 So. 3d 445 (citing *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1361 (La.1992)).

[117] *Id.* (citing *Williams v. Sewerage & Water Bd. of New Orleans*, No. 92–C–1688 (La. 1/19/93), 611 So. 2d 1383, 1386).

of four categories,"[118] including "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant."[119]

Defendants cite *Costello v. Citibank (South Dakota), N.A.*, a case decided by the Louisiana Second Circuit Court of Appeal.[120] There, the plaintiffs brought action to recoup from banks and creditors funds stolen by the plaintiffs' employee, who wrote company checks to pay her personal debts.[121] In finding that the doctrine of *contra non valentem* did not apply to suspend prescription of a cause of action, the court reasoned that "[h]ad [the plaintiff] merely glanced at the farm account bank statement at any time, he would have determined the embezzlement by [the plaintiff's employee]."[122]

In *Body by Cook v. Ingersoll-Rand Co.*, this Court held that it "was not free to decide the issue of *contra non valentem* as a matter of law because there was a disputed issue of material fact as to whether the alleged tort was reasonably knowable by the Plaintiffs under the circumstances, considering [the Plaintiff's] education, intelligence and the nature of defendant's conduct."[123] This Court reasoned that a determination of whether the plaintiff "acted reasonably to discover the source of the problem required drawing conclusions from the evidence, and fair-minded men could

---

[118] *Id.*

[119] *Id.* at 367.

[120] *Costello v. Citibank (South Dakota), N.A.*, 45–518 (La. App. 2nd Cir. 9/29/10), 48 So. 3d 1108.

[121] *Id.* at 1113.

[122] *Id.*

[123] 39 F.Supp.3d 827, 840 (E.D. La. 2014) (Brown, J.) (citing *Wells v. Zadeck*, 2011–1232 (La. 3/30/12), 89 So.3d 1145, 1155 n.1).

reach different results."[124] Accordingly, the Court determined that because the plaintiff's reasonableness was an issue of fact, it would not have been proper for the Court to have decided *contra non valentem*.[125]

In this case, Plaintiffs filed their original petition on May 12, 2016. Plaintiffs allege that they did not have notice of their tort claims until the foreclosure of their property in July of 2015, which is within one year of the original filing date. Defendants argue that the December 27, 2013 letter from and phone call to Ocwen were sufficient to provide Plaintiffs with constructive notice of their tort claims and to begin the one-year prescriptive period. Unlike in *Costello*, Plaintiffs allege they had no way of knowing of their tort action until the foreclosure on their property in July of 2015. Therefore, determination of whether the alleged tort was reasonably knowable by the Plaintiffs under the circumstances, considering their education, intelligence and the nature of Defendants' conduct, raises an issue of fact that cannot be decided on a Rule 12(c) motion.

Furthermore, Plaintiffs argue that under the continuous tort doctrine, prescription dates from cessation of the wrongful conduct causing the damage, which in this case, Plaintiff argues is to be the date of foreclosure. Defendants argue that the continuing-tort theory is not applicable because each alleged misapplied or converted loan payment that Plaintiffs complain about constitutes "a separate wrong;"[126] none of Defendants' alleged actions constitute "continuous,

---

[124] *Id.*

[125] *Id.*

[126] Rec. Doc. 40 at 4 (quoting *Costello v. Citibank (South Dakota), N.A.*, 45,518 (La. App. 2nd Cir. 9/29/10), 48 So. 3d 1108, 1113).

cumulative, synergistic" conduct;[127] and each of Defendants' alleged misapplication or conversion of Plaintiffs' loan payments gave rise to "a finite ascertainable amount of damages."[128]

Under the continuing tort doctrine, "[w]hen the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage."[129] "The continuing tort doctrine requires both continuous tortious conduct and resulting damages."[130] Moreover, "[r]esolution of the prescription issue before us hinges upon a determination of whether each of the alleged incidents of" fraud, conversion, or negligence "constitutes a separate cause of action, with prescription running from the date of each separate incident; or whether the entire course of conduct constitutes a single cause" of fraud, conversion, and, or, negligence, with prescription as to each claim "running from the date of the last incident or abatement of the course of conduct."[131] Once a court finds that prescription did not commence to run on a claim until the continuous conduct abated, the court must then determine the factual issue of when the conduct abated.[132]

In *Bustamento v. Tucker*, the plaintiff alleged that her claim for intentional infliction of emotional distress based on sexual harassment in the workplace was not prescribed because the

---

[127] *Id*. (quoting *Bustamento*, 607 So. 2d at 542).

[128] *Id*. (quoting *Costello*, 48 So. 3d at 1113).

[129] *Outdoor Sys., Inc. v. Entergy Corp.*, No. 2001-CA-0613 (La. App. 4 Cir. 12/19/01), 804 So.2d 848, 850.

[130] *Id*.

[131] *Bustamento*, 607 So. 2d at 538.

[132] *Id*. at 542 (Having found that prescription did not commence to run on Ms. Bustamento's claim until the continuous conduct abated, we must now determine the date on which such abatement occurred. Before addressing **the factual issue** of when the conduct abated . . . .").

defendant's conduct creating a hostile work environment was continuous and occurred over a period of time.[133] On appeal, the Louisiana Supreme Court reasoned that "it is the cumulation of acts and conduct, and the resulting cumulation of damages, that transforms the individual incidents of harassment into an actionable tort."[134] Therefore, the Louisiana Supreme Court held that the plaintiff's claim had not prescribed, reasoning that "when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated."[135]

In *Costello*, the Court of Appeal of Louisiana, Second Circuit, rejected the plaintiffs' argument that the actions of defendants constituted a continuing tort, reasoning:

> Each deposited check written by [the plaintiff's employee] constituted a separate conversion with separate damages. The operating cause of the injury was not a continuous one giving rise to successive damages. There was neither a continuous action on the part of the payees nor a continuous damage suffered by the [plaintiffs], both of which are necessary to find a continuing tort.[136]

Additionally, in *Scott v. Am. Tobacco Co.*, the Court of Appeal of Louisiana, Fourth Circuit, citing *Bustamento*, held that a fraud action based on allegations of the defendant's suppression of truth, the continuous withholding of information constitutes a continuing tort.[137]

---

[133] *Id.*

[134] *Id.* at 541.

[135] *Id.* at 542.

[136] *Costello*, 48 So. 3d at 1113.

[137] 2004-2095 (La. App. 4 Cir. 2/7/07), 949 So. 2d 1266, 1280, writ denied, 2007-0662 (La. 1/7/08), 973 So. 2d 740, and writ denied, 2007-0654 (La. 1/7/08), 973 So. 2d 740.

In this case, Plaintiffs' allege that Defendants' conduct in refusing to apply Plaintiffs' payments to the Mortgage Loan, continuously representing that Plaintiffs' loan was in default, and refusing send Plaintiffs monthly statements or information about their loan, caused Plaintiffs to lose their house, lose their money, and suffer damage to their credit. Unlike in *Costello*, Plaintiffs do not allege that each separate incident resulted in a discrete, fractional loss of their total damages. Rather, Plaintiffs allege that because of the continuous, cumulative, synergistic nature of Defendants' conduct, the harm to Plaintiffs continually mounted in their damage to credit, loss of money, and lack of ability to rectify the payment errors, and that this harm ultimately culminated in the loss of their house.

Plaintiffs allege that Ocwen suppressed true information in refusing to send Plaintiffs monthly statements or otherwise communicate with them about the status of the loan; that sometime after the April 2013 conversation, Ocwen cut off communication with Plaintiffs and Plaintiffs were told that Ocwen was unable to communicate with Plaintiffs due to their 2008 bankruptcy filing; and that each month following the April 2013 phone call, Plaintiffs would call Ocwen and inquire about the amount of that month's payment. Accordingly, Plaintiffs have alleged that Defendants continually suppressed information giving rise to this fraud claim, and the continuous suppression of that information constitutes a continuous tort. Moreover, the issue of when the continuous conduct abated is an issue of fact.[138]

---

[138] *Bustamento*, 607 So. 2d at 542.

On a Rule 12(c) motion, "[p]leadings should be construed liberally," and judgment is "appropriate only if there are no disputed issues of fact and only questions of law remain."[139] With respect to whether the alleged tort was reasonably knowable by the Plaintiff and when the continuous conduct abated are issues of fact that cannot be decided on a Rule 12(c) motion.

## B.    *Claim for Fraud*

Even if Plaintiffs' fraud claim were not time-barred, Defendants argue, Plaintiffs have failed to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) because Plaintiffs have not sufficiently alleged that Ocwen acted with fraudulent intent, and Plaintiffs have not alleged the existence of a fiduciary relationship between them and Ocwen that would have obligated Ocwen to disclose payment information to Plaintiffs. Plaintiffs, in turn, argue that they alleged Ocwen's conduct constituting fraud with particularity sufficient to state a fraud claim.

Pursuant to Louisiana Civil Code article 1953, fraud is defined as (1) "a misrepresentation or a suppression of the truth" (2) "made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction.[140] "In order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information."[141]

---

[139] *Great Plains Trust Co.,* 313 F.3d at 312.

[140] LA. CIV. CODE ART. 1953.

[141] *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 2011-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509, *writ denied,* 2011-2021 (La. 11/18/11), 75 So. 3d 464; *see also Greene v. Gulf Coast Bank*, No. 91–C–1377 (La. 1/17/92), 593 So. 2d 630, 632; *see also Boncosky Servs, Inc. v. Lampo*, 98–2239 (La. App. 1st Cir.11/5/99), 751 So.2d 278, 287, *writ denied*, 00–0322 (La. 3/24/00), 758 So.2d 798.

Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit has held that "general allegations, which do not state with particularity "what representations each defendant made, do not meet this requirement."[142] "Rule 9(b) requires the plaintiff to plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby."[143] However, "[c]ourts in this district recognize that fraud by silence is, by its very nature, difficult to plead with particularity."[144] Moreover, "To plead a claim for fraudulent concealment, the plaintiff must specifically allege: "(1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information."[145] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[146]

In *Webb v. Everhome Mortgage*, a Fifth Circuit case, the plaintiff brought a claim for fraud stemming from the Defendant's conduct leading to the foreclosure sale of the plaintiff's home.[147] In *Webb*, the plaintiff alleged that the defendant committed fraud by repeatedly telling him that it

---

[142] *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

[143] *Torres-Aponte v. JP Morgan Chase Bank, N.A.*, 639 F. App'x 272, 274 (5th Cir. 2016) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (internal quotation marks omitted)).

[144] *Sheppard v. Liberty Mut. Ins. Co.*, No. CV 16-2401, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016) (citing *In re Ford Motor Co. Vehicle Paint Litig.*, No. 1063, 1997 WL 539665, at *3 (E.D. La. Aug. 27, 1997)).

[145] *Id.* at *3 (quoting *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. 15-638, 2016 WL 5869787, at *9 (E.D. La. Oct. 7, 2016)).

[146] Fed. R. Civ. P. 9(b).

[147] *Webb v. Everhome Mortg.*, 704 F. App'x 327 (5th Cir. 2017).

had not cancelled his policy for property insurance with a third party insurer, even though, as it later admitted, the defendant had indeed canceled the policy.[148] In that case, the Fifth Circuit held that the plaintiff's allegations that "on more than 12 occasions from January 2011 through August 2012" he spoke with the defendant's "representatives from multiple departments" who told him that the defendant had not cancelled the insurance policy were not sufficient to satisfy the Rule 9(b) pleading requirement for fraud.[149] The Fifth Circuit further stated that the plaintiff's assertion that "missing details," such as the exact date of each conversation and the name of the specific representatives to whom the plaintiff spoke, "[did] not warrant dismissal of his fraud claim because they [could have been] easily determined through discovery," was unavailing because allowing "the insufficient fraud claim to proceed to discovery would defeat the purpose of Rule 9(b)'s heightened pleading standard: to serve as 'a gatekeeper to discovery [and] a tool to weed out meritless fraud claims sooner than later.'"[150]

With respect to the first element for fraud, Plaintiffs allege Defendants made three misrepresentations and engaged in one act of suppression of truth. First, Plaintiffs allege that an Ocwen representative stated in a phone call in April 2013 that they were delinquent on their loan, when, in fact, they were not. Second, Plaintiffs allege that at some time thereafter, Plaintiffs were informed on another phone call with Ocwen that their loan was in arrears and that they would be required to pay $3505.55 to bring the account current.[151]  With respect to these two alleged

---

[148] *Id*. at 329.

[149] *Id*. at 330.

[150] *Id*. (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)).

[151] Rec. Doc. 1-2 at 2.

misrepresentations, the particularity standard of Rule 9(b) is not met insofar as Plaintiffs do not allege the exact dates of the conversations or the names of the persons to whom they spoke. In *Webb*, the Fifth Circuit made clear that alleging a general timeframe in which a fraudulent statement was made does not sufficiently state the time of the statement, as required by Rule 9(b), and likewise, merely alleging that a person employed by the defendant made the fraudulent statement does not sufficiently identify the person, as required by Rule 9(b). Furthermore, Plaintiffs do not allege what those persons obtained by making the representations that Plaintiffs were delinquent on the loan. Accordingly, Plaintiffs have failed to state a valid claim for fraud based on these two alleged misrepresentations; however, it is not clear that Plaintiffs can prove no set of facts in support of this claim that would entitle them to relief. Therefore, judgment on the pleadings is not appropriate, and the Court will instead grant Plaintiffs leave to amend their complaint as to the first element of this claim for fraud.

Third, Plaintiffs allege that on December 27, 2017, they received a letter stating their payment for $657.04 was returned, that they continued to send monthly payments, and that in September 2015, Ocwen cashed all the payments it had withheld and not applied to Plaintiffs' loan.[152] Plaintiffs do not allege the identity of the sender of the December 27 letter, as required by Rule 9(b), nor do Plaintiffs allege any other representation with specificity that their subsequent payments had been returned by Ocwen. Furthermore, Plaintiffs do not allege what the person or persons obtained by making the representation that the payments had been returned. Accordingly, Plaintiffs have failed to state a valid claim for fraud based on Ocwen's alleged misrepresentation

---

[152] Rec. Doc. 1-2 at 2–3.

that Plaintiffs' payments had been returned; however, it is not clear that Plaintiffs can prove no set of facts in support of this claim that would entitle them to relief. Therefore, judgment on the pleadings is not appropriate, and the Court will instead grant Plaintiffs leave to amend their complaint as to the first element of this claim for fraud.

Fourth, Plaintiffs allege that Ocwen suppressed true information in refusing to send Plaintiffs monthly statements or otherwise communicate with them about the status of the loan; that sometime after the April 2013 conversation, Ocwen cut off communication with Plaintiffs and Plaintiffs were told that Ocwen was unable to communicate with Plaintiffs due to their 2008 bankruptcy filing; and that each month following the April 2013 phone call, Plaintiffs would call Ocwen and inquire about the amount of that month's payment.[153]

"In order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information."[154] Plaintiffs do not allege that Ocwen owed Plaintiffs a duty to provide them with information about the status of the loan or their payment obligations under the loan. To the extent that Plaintiffs allege that Ocwen's duty arises out of their contractual relationship pursuant to the Mortgage Loan, the Fifth Circuit held in *Terrebone Concrete, LLC v. CEC Enterprises, LLC* that a contractual duty does not satisfy the duty requirement for a fraud claim based on suppression of truth.[155] Furthermore, Plaintiffs do not allege what Ocwen gained by allegedly withholding this information from Plaintiffs. Accordingly, Plaintiffs have failed to

---

[153] *Id.*

[154] *Terrebonne Concrete, LLC*, 76 So. 3d at 509*; see also Greene*, 593 So.2d at 632; *see also Boncosky Servs., Inc.*, 751 So.2d at 287.

[155] *Terrebonne Concrete, LLC*, 76 So. 3d at 510.

state a claim upon which relief can be granted for fraud based on Defendants' alleged refusal to provide Plaintiffs with information about the status of their loan and monthly payment obligations; however, it is not clear that Plaintiffs can prove no set of facts in support of this claim that would entitle them to relief. Therefore, judgment on the pleadings is not appropriate, and the Court will instead grant Plaintiffs leave to amend their complaint as to the first element of this claim for fraud.

With respect to the second element for fraud, which requires an intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other, Plaintiffs allege in the petition for damages that Ocwen "defrauded the Plaintiffs in an effort [sic] maximize their monetary gain, to steal their home, and to steal their monthly mortgage payments."[156] Plaintiffs further allege that "the unjust advantage and inconvenience to [] Plaintiffs was the loss of the home and the theft of their mortgage payments."[157] Pursuant to Rule 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, Plaintiffs have sufficiently alleged the second element of their fraud claim.

## C. *Claim Pursuant to the Fair Debt Collection Practices Act*

Defendants next argue that Plaintiffs' claim pursuant to the Fair Debt Collection Practices Act fails because neither Ocwen nor Deutsche Bank was a debt collector, as defined by the Act. Plaintiffs, in turn, argue that Ocwen was a debt collector because it sought payments from Plaintiffs while claiming that the loan was not current. Plaintiffs further argue that their FDCPA claim should

---

[156] Rec. Doc. 1-2 at 4.

[157] Rec. Doc. 41 at 7.

proceed against Deutsche Bank, as well, because Deutsche Bank engaged in improper debt collection activity by filing for foreclosure on Plaintiffs' home when the debt was not valid.

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[158] Pursuant to 15 U.S.C. § 1692a(6)(F), the term does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."

In *Bridge v. Ocwen Federal Bank, FSB*, the case cited by Plaintiffs in support of their argument that they have sufficiently stated a claim pursuant to the FDCPA, although not binding on this Court, the Sixth Circuit held that the plaintiff's allegation that "there is no assignment of record to establish that Deutsche is a creditor or that Ocwen Bank is a loan servicer; that Ocwen Bank made persistent efforts to collect a debt, i.e., mortgage payments; and that the Defendants used the mails as well as an instrumentality of interstate commerce, i.e., the telephone system, to do so" were "more than sufficient [allegations] to state a plausible claim for relief based on the FDCPA."[159]

Defendants' only argument that Ocwen and Deutsche Bank are not debt collectors, as defined by the FDCPA, is based on Defendants' assertion that the loan was not in default when it

---

[158] 15 U.S.C. § 1692a(6)

[159] *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 363 (6th Cir. 2012).

was obtained by either party. Plaintiffs, however, allege that they were charged a "37.62 Late Fee" at the time the Mortgage Loan was transferred to Ocwen from the prior servicer. Plaintiffs additionally allege that whether the loan was in default at the time it was transferred to Deutsche Bank is a "question of material fact and therefore not susceptible for dismissal pursuant to a challenge under Fed. R. 12(c)."[160]

On a 12(c) motion, judgment is "appropriate only if there are no disputed issues of fact and only questions of law remain."[161] Whether the Mortgage Loan was in default at the time Ocwen obtained it and at the time Deutsche Bank obtained it are facts in dispute. Moreover, as in *Bridge*, Plaintiffs sufficiently allege that Ocwen and Deutsche bank "made persistent efforts to collect a debt," such that both acted as debt collectors, as defined by the FDCPA.[162] Accordingly, judgment on the pleadings is not appropriate with respect to Plaintiffs' claim pursuant to the FDCPA, and therefore, Defendants' motion as to this claim is denied.

### D. *Claim Pursuant to the Fair Credit Reporting Act*

Defendants argue that Plaintiffs have no private right of action because enforcement of Section 1681s–2(a) is governed exclusively by the FTC and other government entities, and because Section 1681s–2(a) is excluded from private rights of action by Section 1681s–2(c). Furthermore, Defendants argue they cannot be liable pursuant to FCRA Section 1681s–2(b) because Plaintiffs do not allege that they first reported the supposed inaccurate credit information to a credit reporting

---

[160] Rec. Doc. 34 at 10.

[161] *Great Plains Trust Co.*, 313 F.3d at 312.

[162] *Id.*

agency, the credit reporting agency notified Defendants of the dispute, and Defendants failed to adequately investigate the dispute and correct any inaccurate information. To the extent Plaintiffs allege state law tort claims for credit damages, Defendants argue those claims are preempted by the FCRA.

Plaintiffs, in turn, argue that they have adequately stated a claim pursuant to the FCRA by alleging that Ocwen is knowingly reporting incorrect and derogatory information to credit reporting bureaus which have resulted in the Plaintiffs incurring credit related damages.[163] To the extent their claims do not fit squarely into the requirement of the FCRA, Plaintiffs argue that they can proceed on state law causes of actions related to Ocwen's reporting of their credit.

Pursuant 15 U.S.C. § 1681s–2(a), "furnishers" of information that transmit information to a credit reporting agency concerning a debt owed by a consumer have a duty to provide accurate information, and correct information that is not complete or accurate. "15 U.S.C. § 1681s–2(c), and Section 1681s–2(d) provides that enforcement of Section 1681s–2(a) shall be by government officials."[164]

"Section 1681s–2(b) imposes duties on furnishers of information to, inter alia, investigate disputed information and report the results of any such investigation to the consumer reporting agency."[165] 15 U.S.C. § 1681i(a)(2) "establishes a duty for a consumer reporting agency . . . to give notice of a dispute to a furnisher of information . . . within five business days from the time

---

[163] *Id*. at 10.

[164] *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).

[165] *Id*.

the consumer notifies the consumer reporting agency of the dispute. Such notice is necessary to trigger the furnisher's duties under Section 1681s–2(b). Plaintiffs do not allege that they first reported the supposed inaccurate credit information to a credit reporting agency, the credit reporting agency notified Defendants of the dispute, and Defendants failed to adequately investigate the dispute and correct any inaccurate information. Therefore, Plaintiffs have not stated a valid claim pursuant to Section 1681s–2(b) insofar as Plaintiffs have not alleged facts as to each element of the claim.

As Plaintiffs have no private right of action pursuant to Section 1681s–2(a), Defendants are entitled to judgment on the pleadings with respect to this claim. In addition, Plaintiffs have not stated a valid claim pursuant to Section 1681s–2(b); however, it is not clear that Plaintiffs can prove no set of facts in support of this claim that would entitle them to relief. Therefore, judgment on the pleadings is not appropriate, and the Court will instead grant Plaintiffs leave to amend their complaint as to their claim pursuant to Section 1681s–2(b).

With respect to Plaintiffs' alternative state law claims related to Ocwen's reporting of their credit, 15 U.S.C. § 1681t(b)(1)(F) states, "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." In addition, § 15 U.S.C. § 1681h(e) states, "no consumer may bring any action . . . in the nature of defamation . . . with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency" based on information disclosed pursuant to Sections 1681g, 1681h, or 1681m, "except as to false information furnished with

malice or willful intent to injure such consumer." Thus, while Section 1681t(b)(1)(F) appears to preempt all state law claims, Section 1681h(e) appears to permit a defamation action in situations involving malice or willful intent to injure.[166]

In *Floyd v. Wells Fargo Home Mortgage Co*., another section in the Eastern District of Louisiana stated the following with respect to how these sections have been reconciled:

> Courts have taken three approaches in reconciling these sections: (1) Section 1681t(b)(1)(F) subsumes Section 1681h(e); (2) Section 1681t(b)(1)(F) applies to state statutory regulation and Section 1681h(e) applies to state tort actions; and (3) Section 1681t(b)(1)(F) "should only be used to preempt state actions premised upon a credit furnisher's conduct occurring after the furnisher receives notice of a dispute." The Fifth Circuit in *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 638 (5th Cir.2002) stated that the FCRA preempts state law defamation claims unless the plaintiff proves malice or willful intent—which may suggest the second or third approach. Thus, under the third approach to reconciling Sections 1681t(b)(1)(F) and 1681h(e), if the conduct complained of occurred prior to the furnisher of information receiving notice of a dispute, and if the plaintiff proves the defendant's requisite mental state, his defamation claim may not be preempted.[167]

As in *Floyd*, "with the general factual allegations pled, it is impossible for the Court to perceive [Plaintiffs'] exact theory, and therefore whether there is any preemption under Section 1681t(b)(1)(F)." Moreover, it is not clear whether any set of facts exist in support of a state law claim based on Defendants' credit reporting upon which Plaintiffs could prevail. Accordingly, these claims are not appropriate for judgment on the pleadings, and the Court will instead grant Plaintiffs leave to amend their complaint as to these claims.

---

[166] *Floyd v. Wells Fargo Home Mortg. Co.*, 848 F. Supp. 2d 635, 643 (E.D. La. 2012) (Barbier, J.).

[167] *Id.* at 644 (internal citations omitted).

*E.*     ***Whether Plaintiffs Are Entitled to Non-Pecuniary Damages for Their Breach of Contract Claim***

Defendants argue that Plaintiffs cannot recover non-pecuniary damages because Plaintiffs cannot establish that the contract was entered into for a non-pecuniary purpose, and Plaintiffs have not alleged that Defendants' alleged breach of contract was calculated to inflict grief, vexation, or inconvenience on Plaintiffs. Plaintiffs, in turn, argue that they are entitled to recover non-pecuniary damages because Defendants acted in bad faith by failing to utilize prudent business practices in their dealings with Plaintiffs; and therefore, Defendants intended to aggrieve Plaintiffs.

Louisiana Civil Code article 1998 states:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss. Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

Plaintiffs do not argue that the Mortgage is a non-pecuniary contract. Furthermore, Plaintiffs do not allege in the petition for damages that Defendants "intended to aggrieve the feelings" of Plaintiffs through Defendants' failure to perform its obligations under the Mortgage. Accordingly, Plaintiffs have not alleged facts sufficient to show that they are entitled to non-pecuniary damages for the breach of contract claim. However, it is not clear that no set of facts exist in support of Plaintiffs' breach of contract claim that would entitle them to recover non-pecuniary damages. Therefore, judgment on the pleadings is not appropriate, and the Court will instead grant Plaintiffs leave to amend their complaint as to this claim.

*F.* *Claim for Unjust Enrichment*

Defendants argue that because Plaintiffs have other legal remedies against Defendants, whether or not Plaintiffs are successful in pursuing those remedies, Plaintiffs' claim for unjust enrichment should be dismissed. Plaintiffs acknowledge that prior to the foreclosure other legal remedies were available and are asserted through this lawsuit. However, Plaintiffs argue that should the Court determine that no legal remedies exist for claims after the contractual relationship ended, Plaintiffs should be permitted to proceed under the theory of unjust enrichment.

The Court has made no determination as to whether legal remedies exist for claims after the contractual relationship ended. Moreover, the Court has granted Plaintiffs leave to amend all claims that are not validly stated in the petition for damages and which Plaintiffs have not voluntarily dismissed. Since the Court has not considered and cannot consider whether legal remedies exist for claims after the contractual relationship ended until Plaintiffs amend their complaint, judgment on the pleadings is not appropriate as to this claim.

## V. Conclusion

For the reasons stated above, Plaintiffs' claim for violation of the Louisiana Unfair Trade Practices Act and Plaintiffs' claim pursuant to Section 1681s–2(a) of the Fair Credit Reporting Act are hereby dismissed. In addition, Defendants' motion for judgment on the pleadings as to whether Plaintiffs' tort claims are prescribed is denied. Defendants' motion for judgment on the pleadings as to Plaintiffs' claim pursuant to the Fair Debt Collection Practices Act, and as to Plaintiffs' claim for unjust enrichment, is also denied. Plaintiffs have not alleged facts sufficient to show that they are entitled to recover non-pecuniary damages for the breach of contract claim, and therefore, the

Court will grant Plaintiffs leave to amend the complaint as to this claim. Finally, Plaintiffs have failed to state a valid claim as to their claims for fraud, their claim pursuant to Section 1681s–2(b) of the Fair Credit Reporting Act, and their state law claim based on Defendants' credit reporting; thus, the Court will grant Plaintiffs leave to amend the complaint as to these claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Rule 12(C) Motion for Partial Judgment on the Pleadings"[168] is **GRANTED**, in part, to the extent that Plaintiffs' claim for violation of the Louisiana Unfair Trade Practices Act and Plaintiffs' claim pursuant to Section 1681s–2(a) of the Fair Credit Reporting Act are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' "Rule 12(C) Motion for Partial Judgment on the Pleadings"[169] is **DENIED** as to all other claims.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their complaint, within thirty days of this Order to cure the deficiencies noted, with respect to whether Plaintiffs are entitled to non-pecuniary damages for the breach of contract claim, Plaintiffs' claims for fraud, Plaintiffs' claim pursuant to Section 1681s–2(b) of the Fair Credit Reporting Act, and Plaintiffs' state law claims based on Defendants' credit reporting, if possible.

**NEW ORLEANS, LOUISIANA**, this  23rd   day of February, 2018.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[168] Rec. Doc. 31.

[169] *Id.*